you can thank you your honor go ahead thank you your honors good morning may it please the court I'm Brian Ellickson for the plaintiff appellant Kelly Kapp in this social security disability matter I will endeavor to reserve two minutes for rebuttal this case arises from a denial of Ms. Kapp's application for title 2 social security disability benefit I hope to touch on two of two errors the judge made one in evaluating the opinion of Ms. Kapp's treating physicians another additional errors in her judges evaluation of Ms. Kapp's subjective testimony Ms. Kapp's application for disability benefits was supported by two treating physicians a treating neurologist dr. Saperstein who treated her primarily for Ehlers-Danlos syndrome autonomic disorders and chronic pain she also suffers from orthopedic impairments the judge identified several severe impairments including degenerative disc disease and a seat status post ACL reconstruction but dr. Saperstein's treatment certainly seems focused on the sequelae of Ehlers-Danlos and other disorders the LJ gave less than full weight to this opinion multiple opinions from dr. Saperstein it's notable that we're operating under the pre 2017 regulations and so some deference would be normally offered to a treating physician and in any event any attempt to discredit or would require specific and legitimate reasons the LJ alleged that dr. Saperstein simply adopted Ms. Kapp's subjective complaints that conclusion was not based on any cited evidence in fact I'm aware of no evidence in the record that indicates the dr. Saperstein abandoned his medical judgment to blindly adopt Ms. Kapp's subjective complaints in the absence of that fall the Commission response sites to dates to try to correct the LJ's rationale dr. Saperstein offered a number of opinions and some of them he said limitations were in existence in October of 23rd 2013 in connection with the long-term disability claim not before us today in other opinions he said the limitations were also in existence in September 2014 which let me ask you this the government argues or contest contends that dr. Saperstein never did any serious physical examination of Ms. Kapp after that initial 1914 2014 examination do you have a response to that is that true judge we don't see you you're correct that there is an initial physical examination noting some certainly abnormal findings subluxation of some joints the ability for her thumb to actually touch her own forearms such as the severity of the the laxity of her joints there aren't comprehensive physical examinations in the file after that time certainly other examinations from other providers you know this court has said in cases such as Orrin versus Astru that the purpose of medical records is not for for us making the not for disability determinations but rather for medical record-keeping and so the reason I ask that is I'm at AR 1880 for example this is treatment notes by dr. Saperstein the patient appears tired affect appropriate speech normal significant tenderness to palpation thighs didn't do have unusual texture when palpated some puffiness that sounds like a physical examination to me there judge and they're you know the obviously the first examination was the most comprehensive there are some that are well no this this examination took place not on this was a 19 this was 2016 absolutely so what I'm saying is it looks to me from the record the dr. Saperstein did not merely perform a physical examination in 2014 and I use this just as an example he seems to perform physical examinations at later dates as well he has judged and he's uniquely suited to and not only perform those examinations and treat the Ehlers-Danlos syndromes and other associated disorders being a specialist under the old pre 2017 rules the regulations indicate specialty is a relevant consideration in determining the way to be given to treating physician opinions what are we to do with the other doctors who do not really address these limitations we've got several in the record who seem to be addressing a knee or a shoulder but they don't really say you know we've got person who's suffering from EDS and is therefore disabled what do we do with those the ALJ relied on those extensively the ALJ did I think this court should take heed of the fact that those doctors were operating under what appear to be very narrow scopes you know as you mentioned we have doctors opining to the effective knee limitations or knee impairments but we don't have outside of doctors Saperstein and treating primary care physician Ross our doctors opining to the whole person and in fact dr. Saperstein at 1794 of the administrative record notes that the Ehlers-Danlos syndrome is cumulative to the other orthopedic impairments it can make seemingly normal or slightly abnormal findings result in significant limitation due to the laxity of the joints and the weakness of the joint collagen and I think dr. Saperstein and dr. Ross as well are uniquely suited to make those opinions I do want to touch on ALJ's addressing of miscaps testimony ALJ and discounting that testimony it does have to give clear and pursuant to the case law of the court the ALJ alleged conservative treatment and when that's simply not the case and this cap is status post multiple surgical procedures she's also status post invest invasive injections the surgical procedures alone certainly take us well beyond the realm of what would be considered conservative treatment ALJ cited to activities of daily living including a sighted trip to California from the state of Arizona without any additional information as to how it was performed the ALJ claimed without evidence that it was performed outside of the two trips to California from Arizona were pretty striking because they were quite inconsistent with her claim that she could not sit for longer than you know five to ten minutes she have some obligation of explaining how she did that consistent with her complaints hearing she said she said she could sit for about 20 minutes at a time you know I don't think there's any necessarily inconsistency with ones traveling from Arizona to California if it's in an automobile obviously one can rest and lie down if it's on an airplane one has the flexibility to move about a cabin to address one's pain to simply conclude without evidence that it must have been assessed limitations is is somewhat harsh to miscount you know what she did while she was in California how long she was there I do not judge I was not counsel at hearing and I'm not aware of records that would indicate as I read the ALJ there was one trip to California and one trip quote out of town so not not two trips to California how how do we even know that she took those trips what's the evidence of that I mean I'm not contesting that but I'm trying to judge if I recall in the medical records I don't believe there is testimony at hearing regarding that issue specifically I would not contest those trips happened I would say that they could certainly be performed within assessed limitations I would also there was certainly no question I mean I read the transcript there was no questioning about that one way or the other I mean it just wasn't mentioned there was not judging and I am mindful of my time and there any additional questions I would ask to reserve the balance looks like we have no further questions for now but we'll go ahead and reserve the rest of your time for a bottle and we'll thank you go to the Pelley's argument good morning your honor see Elizabeth fear on behalf of kilolo Kijikazi the acting commissioner of Social Security we do have two treating sources in this case who issued very extreme limitations but we also have at least we have 11 other doctors who assess this claimants condition and it's true some of them were specific to a shoulder injury or a knee injury but they also did physical examinations and we have doctorate and the LJ relies on dr. Kapoor who is a neurologist who addressed claimants condition and found a lot of normal findings dr. Zakins who is a pain specialist who also made some normal findings these are both in 2015 the LJ did rely on dr. Boyd who was earlier in the process in 2014 but that's at 75 F that doctor also made pretty normal findings and assess limitations that were consistent with being able to perform light work you have dr. Burgess who's an orthopedic surgeon who found normal motor functioning intact mental status intact sensation then you have the two state agency physicians doctors Woodard and dr. Wright who went through a significant amount of evidence in one in 2015 make April 2015 and then dr. Wright was in August 2015 if you look at their did either of those two doctors examine miss cap no state agency doctors don't exist in the records the reason I ask that and is relevant also to the other doctors dr. Saperstein tells us or writes here that she can appear normal for example you look at the MRI and she has what would appear just from the MRI to be age-appropriate an exceptional sort of deterioration but that what it does not show is that because of the she cannot resist or as it were compensate for the age-related degeneration so he says listen if all you're looking at is the is the MRI is you're not going to see this and he's the specialist how do you respond to that well that's not all that the state agency doctors were talking about they were actually talking about more than just objective exam objective evidence like MRIs or what it is MRIs in this case they are talking about examination findings and it's true that dr. Saperstein is sort of you know he says things as though claimant and claimant does have a condition that's unusual but you have a pretty massive record here and you have a doctor treating source dr. Saperstein who's saying not only that she has this EDS condition that has hypermobility and whatnot he's also saying that she has you know repeat subluxation of her ribs he's saying she can't control her autonomous on nervous system which means her heart rate her temperature control at one point he says she needs to wear a winter coat well when most people don't he's talking about her blood pressure and that none of that shows up and not only it doesn't show up in his records but it also doesn't show up in the records of these other doctors who are specialists and who are aware that she has this EDS condition so it's not it's not a mystery that she has the condition when she's being seen by for instance dr. Letterman who performed her shoulder surgery and said she had no restrictions or doctors you know they again there's dr. Kapoor dr. Burgess dr. Boyd all of these people are pain specialists and they're all aware of her condition and they're all making normal not just objective they're not just pointing to the objective MRI evidence they're pointing to her examination findings so given the extreme nature of what dr. with this condition it makes no sense that in a 2,000 page record at some point some of these conditions which are actually amenable to objective documentation such as the at several points in your brief you argue that because at one point dr. Ross says she's not disabled that we should discount a subsequent statement by dr. Ross that she is disabled how important to your actually that's a mistake and and I apologize my opponent pointed that out there are two dr. Ross's in the record so the the first one examined her actually I don't think he examined her but he did in that Arizona long-term disability portion of the record which was December 2014 and I know it's exhibit 77 up there was dr. Ross was an orthopedic surgeon dr. Barry who was a rheumatologist and dr. Geronovich who's a neurologist and they all went through sort of the it looks to me like like workers comp kind of records they went through a massive amount of records and they came to particular conclusions but that was David Ross not not Jordan Russell I was incorrect about that yeah so so the part of your brief that emphasizes the inconsistency of Jordan Ross is treating principal care physician that has been entirely consistent well not entirely consistent and I also would put up that the ALJ didn't make the mistake I did that's just my mistake so the ALJ does mention though that dr. Jordan Ross pointed out he changed the the alleged beginning of the claimants limitations based on her changing of that and while you might not agree with the ALJ you might look at it a different way that that is evidence that dr. I'm sorry that was dr. Saperstein um so you're correct you're correct your honor as I read dr. Jordan Ross his doctor yeah he said dr. Jordan Ross has been consistent start to finish at the beginning he refers to the patient to dr. Saperstein because he's a general he's a GP and then he's a do because dr. Saperstein is the specialist but I don't see any inconsistency in dr. Ross's evaluation you're correct and I apologize for that dr. Saperstein is the one who changed the onset date well but he didn't necessarily change his diagnosis he changed the onset date because the relevant on say date for the purpose of the proceeding was different well that evinces that he's paying more attention to what his client is asking then to what he's actually observing and again your honor the this record is so that the two state agency doctors look through a lot of evidence they explain themselves very well dr. Woodard on page 109 and dr. Wright right on pages 136 to 37 they give a lot of information about why this record doesn't support the extreme allegations that dr. Saperstein had assessed nor the claimant subjective allegations and dr. Ross I would point out didn't issue an opinion until after the claimant state last insured which was December 2016 he first issued an opinion in March 2017 but if you look at his records his actually much more benign than dr. Saperstein's are he he's continually finding normal normal findings and hits his son his treatment records are at 32 F 38 F 49 F 69 F those are all treatment records from dr. Ross and they're very benign and he also treated claimant sorry well another question I read the statements by the patient and by her husband are you saying that they're just not telling the truth because if they're telling the truth that's a pretty severe disability well your honor it's not a matter of what they perceive as the claimant's limitations it's what the ALJ no no no it no I'm afraid if the statements are true this is an extreme disability did the ALJ even discuss that yes on page for the end of her decision she discusses the opinions from family and friends page 34 so just so your honor it every disability record has statements from a claimant's friends and family usually I'm sorry could you tell me where the ALJ discusses this written statements and why the ALJ either rejects or places limited weight it's the second paragraph above bold six through the date last insured finally the undersigned is unable to find what page are we on 34 I'm on page 34 it's er 57 oh I'm sorry is this a case where we didn't use the car so it's it's administrative record 34 finally the undersigned is unable to find the claimant more limited based on the statements provided by members of her family and friends summarized above as explained throughout this decision greater emphasis was placed on the residual function I saw that and I was wondering if that's the extent of the explanation well that is a proper explanation your honors that's the this court has said that lay witness evidence that's inconsistent with the medical evidence is that's a germane reason and again your honors this record is remarkably consistent throughout so claimant was performing a medium job in that job based on some limitations in her knees then she became more involved in this treatment for EDS but again the extreme limitations that dr. Ross and dr. Shepherd seen are assessing including these claimant test what she's unable to regulate her body functions in a 2,000 page record we don't have any corroboration from that and as I said in the out at the outset we have at least 11 other doctors who've either reviewed this evidence or examined her specifically knowing full well that she has EDS and they came to very different conclusions and doctors Ross and dr. Saber seen and this LJ's decision is exceedingly detailed it it clears the substantial evidence standard which has this court reiterated in Ford accepting the Supreme Court's decision in the aspect that's a low bar and this LJ's decision is more than adequately supported by substantial evidence well thank you counsel taking a little bit over time to have any other questions for my colleagues so coming back to Palin's counsel can I can I start by asking you I think in your opening you you had mentioned that the LJ was incorrect in saying about the conservative treatment when here you had two surgeries because as I recall those were one was to fix a torn ACL I think is there something like that and the other was some sort of soldier shoulder surgery I believe so what do we do with that where you have these these surgeries to fix injuries and maybe those injuries are even a result of the CDS because I could kind of see where the looseness of joints or something would cause but you know she seems to have responded there's at least some indication she responded well those surgeries but those surgery I took the eight LJ to be saying that conservative treatment was with regard to the things that she was saying overwhelmingly were causing her disability you know these the the other issues not not that she's she's unable to do anything because of her shoulder or her knee so do we you should say like if you were in a car accident and you had a surgery for that while you were saying you were disabled for other reasons I don't think you'd normally think of that as undermining the fact that your treatment for the other stuff was conservative and so that's kind of how I understood it but am I misunderstanding something judge I mean I certainly didn't read about that way the judge wasn't the LJ wasn't nearly as nuanced as you've been in your question even if that were the case judge you know to alert can to allege conservative treatment when someone is being treated for Ehlers-Danlos and autonomic disorders that don't have any sort of more aggressive regimen available to them no surgical treatment that can fix the issue I don't think is a rational basis to to undermine her testimony certainly not a clear and question and I took up all your time with that one question so you can I'm sure you got something else to say so I don't want to I will be brief the only the last point I want to make is the the LJ calls these limitations extreme claimants counsel or rather the the Commissioner's Council goes to great lengths to claim that if we were to believe in this cap she'd be a rag doll she'd have to live in an assisted living facility let's look at dr. Saperstein's limitations at page 642 of the record he says she can sit for four hours a day she can stand or walk for an hour each she can do these activities for six out of eight hours this is not a rag doll this is someone who cannot sustain full-time work that's affirmed by the testimony of the vocational expert but to allege that believing this cap would require us to believe that she'd be a vegetable I think is beyond the pale judge and not what any of the doctors of the pine to I do appreciate the flexibility for going over yeah any other questions for my colleagues I will thank you both it's been very helpful this morning and with that this case is now submitted and we will move on to the next case
judges: FLETCHER, BYBEE, VANDYKE